GEORGE E. GRIDLEY AND ANOTHER vs. ELLIOT B. SUMNER.

The statute with regard to builders' liens (Gen. Statutes, tit. 18, chap. 7, sec. 12,) provides that in case of the liens of subcontractors the owner of the building shall be allowed whatever payments he shall have made in good faith to the original contractor before receiving notice of such lien. Held that a mere verbal guarantee by the owner of the payment of certain debts of the original contractor for materials purchased for the building, did not constitute "payment" to the contractor within the meaning of the statute.

And held that the rights of the subcontractor with respect to his lien were to be determined by the state of things at the time he gave notice to the owner of his lien; and therefore that the case was not affected by the fact that the owner afterwards, and before suit brought upon the lien, paid the bills which he had guaranteed.

BILL to foreclose a subcontractor's lien for materials furnished for a building of the respondent; brought to the Court of Common Pleas of New London County. Facts found and case reserved for advice. The case is fully stated in the opinion.

S. Lucas, for the petitioners.

J. A. Hovey, for the respondent.

PARDEE, J. In the month of November, 1872, F. G. Post, a builder, was constructing a house for the respondent under a contract by the terms of which Post was under an obligation to furnish all the materials for, and perform all the labor upon

the house, for the sum of $6,250, payable upon the completion of the same. In that month Post applied to the petitioners to furnish him certain caps to be used upon the house; and they made and delivered to him, upon the premises, on or before the 6th day of December, 1872, caps of the value of $131, a portion of which, of the value of $91, he used in the construction of the house in question. On the 3d day of January, 1873, the petitioners, in accordance with the provisions of the statute in such case made and provided, gave due and legal notice to the respondent, as owner of the house, that they intended to claim a lien thereon for the price of said caps. And the lien was in due form lodged for record in the office of the town clerk on the 3d day of February following.

The statute also provides that no lien shall attach to any building, or to the land on which the same may stand, to a greater amount in the whole than the price agreed to be paid for such building by the owner; and that, in determining the amount to which any lien or liens shall attach upon any land or building, the proprietor of any such land or building shall be allowed whatever payments he shall have made in good faith to the original contractor before receiving notice of such lien or liens.

On the 3d day of January, 1873, when the petitioners gave said notice of lien to the respondent, he had advanced to Post, and verbally guaranteed, with his approval, bills for materials for and labor upon said house, to the amount of $6,400 ; and unless the bills verbally guaranteed are to be treated as payments, more than the amount of the petitioners' claim was then due to the contractor. Subsequently to the 3d day of February, 1873, the respondent paid the bills thus verbally guaranteed, with the approval of Post, and the guaranty and payment were made in good faith.

There was therefore, upon the 3d day of January, 1873, the day when the petitioners' lien came into existence, a fund in the possession of the respondent in respect to which the petitioners, the respondent and Post had certain statutory rights; and the statute must control and determine the division and disposition of that fund.

Upon the facts set forth in the finding the undertaking of the respondent was simply a verbal guaranty of Post's debt to another after the credit had been given to Post alone. There is no suggestion of any new or further consideration for the promise; no intimation that Post's creditors released him from liability or changed their relative positions in any manner. The case seems to fall quite within the definition given in *Packer* v. *Benton*, 35 Conn., 343; it was "an undertaking by a person *not before liable* for the purpose of securing or performing the same duty for which the party for whom the undertaking is made *continues liable*," and therefore within the statute of frauds.

On the 3d day of January, 1873, the day when the petitioners gave the respondent notice of their intention to file a lien, he had not in fact paid, nor in law come under any obligation which could be enforced against him to pay, these debts of Post; he had not done any act which will satisfy the demands of the word "payment" as used in the statute. It must be held to import either an actual discharge of a debt, or the assumption by the respondent of an obligation which can be enforced against him contrary to his will. We cannot so construe it as to permit the owner of a building first to use a verbal guaranty to pay, to defeat the lien of a material-man, and then to invoke the protection of the statute of frauds against his promise, and thus avoid the payment of both. The statute requires certainties and cannot be satisfied by possibilities. It is not enough that he might thereafter waive the statute of frauds and recognize his guaranties as valid and binding contracts; on the day of the lien there yet remained to him an option, and consequently a doubt as to what in fact would be done; and he cannot be said to have made a payment who still has the privilege of refusing to pay. The statute is explicit; it speaks of acts performed, not of what may be done in the future.

And, inasmuch as, on and after the day named, the rights of the three parties in and to a part or the whole of the fund became dependent upon the language of the statute, the respondent was thereafter powerless to change or nullify the

law, or to destroy or even affect the petitioners' rights. He could not by any subsequent act of waiver, or undertaking to pay, or payment even, create a new charge upon the fund to the prejudice of those rights as they stood fixed on that day. We cannot allow him to admit any person to share in it who had not on that day a fixed legal right so to do; we cannot allow him to redeem his voidable promise to Post's creditors at the expense of the petitioners; and this, because we are restricted by the statute within the narrow limits of the word "payment."

We advise the Court of Common Pleas to pass a decree in favor of the petitioners for the sum of $91, with interest from the 6th day of December, 1872, and their costs.

In this opinion the other judges concurred.